**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BRIAN HUGEN,
<u>Plaintiff-Appellant,</u>

v.

NEW ENGLAND RETAIL EXPRESS,
INCORPORATED; DAVID JONES,
<u>Defendants-Appellees.</u>

No. 95-2889

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Richard Kellam, Senior District Judge.
(CA-95-252-2)

Argued: September 23, 1996

Decided: October 25, 1996

Before MURNAGHAN and LUTTIG, Circuit Judges, and
HALLANAN, United States District Judge for the Southern District
of West Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Thomas E. Lacheney, DEAL & LACHENEY, P.C., Rich-
mond, Virginia, for Appellant. Temple Witt Cabell, SCHAFFER &
CABELL, P.C., Richmond, Virginia, for Appellees. **ON BRIEF:**
Heidi E. Henderson, SCHAFFER & CABELL, P.C., Richmond, Vir-
ginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Plaintiff-appellant Brian Hugen appeals from the district court's summary judgment dismissal of his state law slander claim against defendants-appellees New England Retail Express ("NER") and David Jones. Finding no error in the district court's opinion, we affirm.

I.

NER entered into a contract with Haynes Furniture, Inc., whereby NER agreed to deliver furniture sold by Haynes to various customers. NER employed several independent contractors, including Hugen, to perform the actual delivery services for Haynes. These independent contractors in turn employed "helpers" to assist them. David Jones was the NER employee charged with supervising the independent contractors and their helpers.

In May of 1992, while Hugen was repossessing certain of Haynes' furniture from an abandoned apartment in the Holly Point apartment complex, he took for personal use a mirror that he found in the apartment. Believing that the mirror was the company's and that Hugen had stolen it, Haynes undertook an investigation. Hugen denied stealing the mirror, claiming that Haynes had not listed it as one of the items Hugen was to repossess, and that the apartment manager gave him permission to take the mirror.

On July 28, 1992, Haynes security personnel, Victor Morkunas and Charles Narducci, both former Virginia Beach Police Department police officers, informed Jones that Haynes had concluded that Hugen stole the mirror. Morkunas and Narducci informed Jones that the matter had been referred to the Virginia Beach Police Department, and that Haynes had barred Hugen from its property and no longer con-

2

sented to Hugen delivering Haynes' furniture. See J.A. at 324 (district court opinion).**1**

On July 28 or 29, Jones terminated NER's contract with Hugen, and then held a meeting with all of the other independent contractors and their helpers. At this meeting, Jones stated that Hugen's contract had been terminated because Haynes believed he had stolen a mirror and would not allow him on its property, and Jones also stated the consequences of stealing furniture from Haynes. The next day, a second meeting was held at which Jones repeated these statements. One week later, on August 6, the Virginia Beach Police Department concluded that the case against Hugen was "unfounded."

On April 11, 1995, Hugen filed this action against NER and Jones in the United States District Court for the Eastern District of Virginia, invoking federal diversity jurisdiction pursuant to 28 U.S.C. § 1332.**2** Hugen claimed that the statements made by Jones at the two meetings constituted slander under the laws of Virginia. The parties filed cross-motions for summary judgment.

On September 26, 1995, the district court granted summary judgment in favor of NER and Jones, and denied Hugen's summary judgment motion. The district court first held that Jones' statements at the meetings were qualifiedly privileged under Virginia law. See Smalls v. Wright, 399 S.E.2d 805, 807 (Va. 1991). In Virginia, "[a] communication, made in good faith on a subject in which the communicating

_____

**1** Hugen concedes that Haynes told Jones that they were investigating Hugen, but Hugen denies that Haynes told Jones that it had concluded that Hugen stole the mirror. Hugen offers no record support for this assertion except for Morkunas' inability to recall whether he made this statement to Jones. J.A. at 170. Morkunas did, however, testify that "[he] could have made that statement" to Jones. J.A. at 170-71. Furthermore, in a July 18 memorandum written by "Narducci via Morkunas," Narducci and Morkunas did in fact conclude that "Brian Hugen has committed a GRAND LARCENY." J.A. at 183. Jones' handwritten notes recording a conversation he had with Morkunas indicate that Morkunas relayed this information to him. J.A. at 230.
**2** Hugen is a resident of North Carolina, and NER is a New York corporation.

3

party has an interest or owes a duty, is qualifiedly privileged if the communication is made to a party who has a corresponding interest or duty." Id. The district court concluded that Jones' statements met the requirements for the privilege because all of the participants at the meetings at which Jones spoke -- Jones, the independent contractors and their helpers -- had a common pecuniary interest in preventing theft from Haynes and other NER customers.

The district court then held that Jones' qualified privilege was not abrogated by common law malice. Id. at 808. In Virginia, Jones' qualified privilege would be "lost if [Hugen] prove[d] by clear and convincing evidence that the defamatory words were spoken with common-law malice." Id. Common law malice exists where:

> (1) the defendant knew the statement was false or made it with reckless disregard of whether it was false or not; or
>
> (2) the statement was deliberately made in such a way that it was heard by persons having no interest or duty in the subject of the statement; or
>
> (3) the statement was unnecessarily insulting; or
>
> (4) the language used was stronger or more violent than was necessary under the circumstances; or
>
> (5) the statement was made because of hatred, ill will or a desire to hurt the plaintiff rather than as a fair comment on the subject.

Id. at 807-08. The district court concluded that "[n]one of the facts argued by [Hugen] . . . begin to give a reasonable jury the facts it would need to find malice by clear and convincing evidence." J.A. at 340.

Finding no error in the district court's opinion, we affirm the opinion of the district court.

AFFIRMED

4